CITIZENS' PIPE LINE COMPANY *v.* TWIN CITY PIPE LINE COMPANY.

Opinion delivered June 8, 1931.

*James B. McDonough,* for appellant.

*Vincent M. Miles* and *Warner & Warner,* for appellees.

BUTLER, J. The present litigation began in this manner. The Harding Glass Company, a corporation engaged in the manufacture of glass, required and used a large quantity of gas as fuel which it had contracted to purchase from the Twin City Pipe Line Company, a corporation engaged in the business of distributing natural gas in and within the vicinity of Fort Smith, Arkansas. The glass company had for a time used the gas delivered by the pipe line company until, through the means of a subsidiary company, it acquired the control of certain gas wells in the State of Oklahoma. The stockholders of the glass company and others organized the Citizens' Pipe Line Company for the purpose of conveying gas from the aforesaid wells to the plant of the glass company for its own use, and procured the passage of an ordinance from the city of Fort Smith by which it was permitted the use of the streets and alleys of the city under which were laid its mains.

On the 15th day of August, 1928, the Twin City Pipe Line Company filed its complaint in the chancery court making the Citizens' Pipe Line Company and the city of Fort Smith defendants, in the prayer of which complaint it asked that the ordinance be declared void, and that the Citizens' Pipe Line Company be enjoined from constructing its pipe lines in the streets of Fort Smith. Soon after the filing of the complaint the Citizens' Pipe Line Company made preparations to begin the work of laying its lines in Fort Smith, whereupon the complainant served notice on August 24th that it would ask for a temporary injunction restraining the defendant pipe line company from proceeding with its work until the cause could be heard on its merits in court. This petition was heard and granted on August 28th, conditioned upon the execution by the complainant of the bond required by statute. This bond was executed and the temporary injunction issued on the last date aforesaid which resulted in the Citizens'

Pipe Line Company ceasing its work in Fort Smith and transferring it to Oklahoma where work was begun on the pipe line and continued until it was completed from the wells to the limits of the city of Fort Smith on October 20, 1928.

On September 14th the cause came on for hearing on its merits, and on September 25 following a decree was rendered as of September 18th by the terms of which the defendants were enjoined from proceeding with the work as prayed for in the complaint. From that decree an appeal was prosecuted to this court, where the decree of the chancery court was reversed and remanded with directions to dismiss the complaint of the Twin City Pipe Line Company for want of equity, the opinion being delivered on November 12, 1928. Upon a remand of the cause the defendant, Citizens' Pipe Line Company, filed a complaint in which it sought to recover damages occasioned to it by reason of its work having been stopped for seventy-three days because of the injunctions granted and issued. In this complaint it was alleged that the suit was brought without probable cause, and items of damage were set up amounting to a large sum. The chancellor in his judgment found "that there is no specific evidence fixing any damages resulting from the temporary restraining order from the date of its issuance to the date of the decree of the chancery court" and dismissed the claim for damages, from which order and judgment is the present appeal.

It is contended by the appellant, Citizens' Pipe Line Company, that its damage was not limited to that accruing from the date of the issuance of the temporary injunction until the decree rendered September 18th following, but also for such damage as it suffered between the entry of the permanent injunction and the decision of this court on appeal reversing the decree of the chancellor and remanding the cause with directions to dismiss the complaint of the Twin City Pipe Line Company for want of equity. If it was established that the suit out of

which these injunctions grew was brought without probable cause or the injunctions maliciously obtained, it is not to be doubted that the contention of the appellant here is correct. In such case the party injured might have maintained his action at law for malicious prosecution, which relief may now by force of statute be granted by the court out of which the injunction was sued. The appellant introduced evidence of another suit having been brought 'in the United States Court by the appellee against the Harding Glass Company for the purpose of showing that this suit was wantonly brought. It argued that the sole purpose of the suit in the United States court was to prevent the appellant here from supplying gas to the Harding Glass Company, with which company it had a contract to take its entire output, and, as its privilege to lay pipes under the streets of Fort Smith was granted for the sole purpose of enabling it to carry out its contract with the glass company, the practical effect of the suit in the United States court would have been to make the franchises involved in this suit worthless.

It is our opinion that a consideration of the issues involved in the suit brought by the appellee company in the United States court against the appellant company does not warrant the inference of any malicious purpose or that it was brought without probable cause. From an examination of the questions determined in the cases of *Citizens' Pipe Line Co.* v. *Twin City Pipe Line Co.*, 178 Ark. 309, 10 S. W. (2d) 493, and *Harding Glass Co.* v. *Twin City Pipe Line Co.* decided by the Supreme Court of the United States May 4, 1931, it will be seen that these questions were important, on which learned lawyers and courts of high repute may and do differ, and therefore it cannot be said that the suit here involved was wantonly brought or without probable cause.

As there was no common-law liability of the party securing the injunction, although erroneously granted, unless it was maliciously obtained, or except as modified

by statute, there would be no general liability for the injunction here issued, unless the common-law rule has been changed by statute or unless the obligation entered into in specific terms or by necessary intendment fixes such liability. The rule is thus stated in chapter on Injunctions, 32 C. J., § 744: "Complainant's liability for the wrongful issuance of an injunction at his instance may, of course, be fixed by the bond that he was required to give as a condition to the granting of the injunction. But, although there is contrary authority, the general rule, unless changed by statute, is that, without a bond for the payment of damages or other obligations of like effect, a party against whom an injunction has been wrongfully issued can recover no damages unless he can make out a case of malicious prosecution by showing malice and want of probable cause on the part of the party who obtained the injunction." The reason for this rule is stated in the case of *Yonkers* v. *Federal Sugar Refining Co.,* 221 N. Y. 206, as follows: "Public policy was thought to demand that the free pursuit of remedies in the courts should not be obstructed by the menace of liability for innocent mistakes"; and thus, in the case of *Russell* v. *Farley,* 105 U. S. 433: "If the legal right is doubtful, either in point of law or of fact, the court is always reluctant to take a course which may result in material injury to either party; for the damage arising from the act of the court itself is *damnum absque injuria,* for which there is no redress except a decree for the costs of the suit, or in a proper case, an action for malicious prosecution."

Since we have seen that the suit out of which the alleged damages grew was not the result of malice and was not without probable cause, the extent of the liability of the appellee company must be ascertained from an examination of the bond given and a consideration of our statute regulating the issuance of injunctions. Section 5792 of Crawford & Moses' Digest provides: "Where it appears by the complaint that the plaintiff is entitled to

the relief demanded, and such relief, or any part thereof, consists in restraining the commission or continuance of some act which could produce great or irreparable injury to the plaintiff, or where, during the litigation, it appears that the defendant is doing, or threatens, or is about to do, or is procuring or suffering to be done, some act, in violation of the plaintiff's rights respecting the subject of the action and tending to render the judgment ineffectual, a temporary injunction may be granted to restrain such act. It may also be granted in any case where it is specially authorized by statute.''

Section 5801 provides: ''In every case the court or judge granting an injunction shall specify in the order therefor an amount for which the party obtaining it shall give security in a bond to the party enjoined, before the injunction shall become effectual; which amount shall be sufficient to cover all the probable damages and costs that may be occasioned by the injunction.''

Section 5802 provides: ''The court or judge may prescribe the effect of the bond, so as to secure to the party enjoined the damages to which he may become entitled, if it is finally decided that the injunction ought not to have been granted.''

These are the provisions of law under which the order for a temporary injunction was made and under which the bond sued on was executed. That part of the order relating to the giving of the bond is as follows: ''It is further ordered and decreed that this order shall become and be effective upon the filing and approval by this court, or by the clerk of this court, of a bond in the sum of $20,000, conditioned that the plaintiff will pay damages accruing to the defendant, Citizens' Pipe Line Company, if it should eventually be adjudged that this order is improperly issued.'' And the condition of the bond executed pursuant to that order is as follows: ''That if the plaintiff, Twin City Pipe Line Company, shall pay such damages as may be adjudged by the court to be due the defendant, Citizens' Pipe Line Company, in the event

such temporary injunction should be found to be improperly issued, this bond to be void; otherwise, to be in full force and effect."

By § 5791 of Crawford & Moses' Digest, it is provided that: "Injunction may be the final judgment in an action, or may be allowed as a provisional remedy, and where so allowed it shall be by order."

It will be seen from an examination of these statutes and the bond that the injunction authorized was a provisional remedy, its purpose being to maintain the *status quo* until the cause could be heard upon the merits and to provide for the security and payment of damages accruing during the life of the temporary injunction, if any should be occasioned thereby, and this was the extent and limit of the liability. It is earnestly insisted, however, that the right to damages by the party enjoined and the liability of the one procuring the injunction was extended by the provisions of act No. 102 of the Acts of 1915, so as to cover all damages which might accrue at any time before the final determination of the cause, irrespective of the time in which the temporary injunction, as such, ceased to function. It is argued that this view of the effect of act No. 102, *supra*, is warranted by the decision in the case of *Sullivan* v. *Wilson Mercantile Co.*, 168 Ark. 262, 271 S. W. 30, where that act was considered. In speaking of the effect of that statute, counsel for appellee say that the statute is sweeping in its terms providing a new remedy where none before existed, and that by § 5801 it is made mandatory that a bond shall be given in every case, and in every case where an injunction is granted a bond is required and the right to the bond is not limited to a temporary injunction. We do not think that a consideration of act No. 102, *supra,* in connection with the entire chapter on injunctions, warrants the position taken by learned counsel. Act No. 102 was an act amendatory of §§ 3998 and 4001 of Kirby's Digest of the statutes. These sections were a part of the Civil Code dealing with the subject of injunctions and were digested in Kirby's

Digest in the chapter on Injunctions, and, as amended by act 102, *supra,* are now §§ 5822 and 5825 of Crawford & Moses' Digest, a part of the chapter on Injunctions in that digest.

Section 3998 of Kirby's Digest was as follows: "Upon the dissolution in whole or in part of an injunction to stay proceedings upon a judgment or final order, the damages shall be assessed by the court which may hear the evidence and decide in a summary way, or may at its discretion cause a jury to be impaneled to find the damages."

Section 4001 of Kirby's Digest was as follows: "Judgment shall be rendered against the party who obtained the injunction for the damages assessed and the assessment shall be conclusive against the surety of such party."

Section 1 of act 102, *supra,* provides that § 3998 of Kirby's Digest should be amended to read as follows: "Upon the dissolution in whole or in part of any injunction or restraining order of any kind and of every kind and nature whatsoever, the chancery court wherein the same was pending may assess and render against principal and sureties on the injunction bond a valid judgment for any and all damages occasioned by the issuance of such injunction or restraining order; and the court may either appoint a master and report as to such damages or may render summary judgment therefor; or at its discretion may cause a jury to be empaneled to find such damages." Crawford & Moses' Digest, § 5822.

By § 2 of said act § 4001 of Kirby's Digest was amended so as to read as follows: "Such judgment for damages shall be rendered against the party who obtained the restraining order or injunction and against his sureties on the bond, and the same shall be conclusive against them, and in proceedings hereunder the sureties shall be considered parties in the cause, provided, the court may in its discretion require reasonable notice to such sureties before such finding and judgment." Crawford & Moses' Digest, § 5825.

Prior to the passage of act No. 102, *supra,* §§ 5803 and 5804 of Crawford & Moses' Digest (at the passage of the act §§ 3977 and 3978 of Kirby's Digest) contained the only specific reference to the character of damages which might be recovered on the dissolution of a temporary injunction, and it might have been, as argued by the appellant, that, under the statute as it existed prior to the passage of act No. 102, the injured defendant "in an injunction suit had no remedy unless the suit was brought to enjoin proceedings upon a judgment." If that be true, that act only enlarged the scope of the law so as to give the right to damages, not only in cases where a judgment was enjoined, but in all other cases in which an injunction as a provisional remedy had been procured, and further enlarged the remedies in injunction suit so as to authorize the court in which the suit was instituted and in that suit to assess the damages against the sureties on the injunction bond without remitting the party aggrieved to an independent action on the bond.

The case of *Sullivan* v. *Wilson Mercantile Co., supra,* relied on by the appellant, goes no further than the above statement. That was a case where the appellee had purchased lands and instituted an action against the appellant in the chancery court, alleging that the appellant was interfering with the possession of the appellee by trespassing on the lands and thus preventing the peaceable possession of the appellee. The prayer of appellee's complaint was that the appellant be perpetually enjoined from interfering with the possession and from trespassing on the land. A temporary restraining order was obtained at the commencement of the action. An answer was filed by the appellant who set up his rights of possession under a lease from the appellee's grantor, and he also filed a cross-complaint in which he alleged certain damages which had been occasioned by his having been deprived of the possession under the injunction issued in the case. On the final hearing of the cause, the court dismissed both the complaint of the appellee and the

cross-complaint of the appellant. The decree contained no formal dissolution of the injunction, and there was no assessment of damages claimed by the appellant. This court on appeal held that the dismissal of appellee's complaint was tantamount to a dissolution of the injunction, and that the trial court erred in not awarding damages to the appellant for being put out of the possession and kept out during the pendency of the action, and said: "If appellant's cross-complaint had been an independent action for damages, his remedy was complete at law, and he could not have invoked the jurisdiction of a court of equity; but, in the present action instituted by the appellee in which an injunction was obtained and which deprived appellant of substantial rights, the latter was entitled under the statute to a restitution of the possession of which he had been deprived by the injunction and an assessment of damages sustained by reason thereof. Crawford & Moses' Digest, §§ 5822-5825. The effect of the dismissal of appellant's complaint was to dissolve the injunction, and appellant was entitled to the relief afforded under the statute." It will be noted that in that case the damages suffered were under a temporary restraining order issued at the commencement of the suit and continuing down until the final decree dissolving the injunction was entered.

An examination of the statutes on the right to injunction and the liabilities of the parties thereunder discloses that there are two classes of injunctions authorized: one, on the final judgment, the other, as a provisional remedy. The latter is referred to in other parts of the statute as a temporary injunction, and it is this class only in which a bond is required. So that, wherever the word "injunction" is used in the statute in connection with the giving of bond or the liability of the parties arising because of such bond, it necessarily means a temporary injunction. For, as we have seen, it is that character of injunction only in which a bond is required. Therefore, as § 5822, *supra*, deals with the remedies against the principal and his sureties on an injunction bond, the words "any in-

junction or restraining order of any and every kind and nature whatsoever'' must necessarily refer to and mean the provisional remedy by temporary injunction. Thus it will be seen that the common-law liability of the party securing an injunction has not been changed by the statute except as to the provisional remedy, liability for which is fixed by the bond. This, by necessary implication, limits the damage to such as was occasioned by, and incurred within the life of, the temporary injunction. The purpose of the temporary injunction, as we have seen, was to preserve the *status quo* until a hearing on the merits in the suit could be had, and, when this hearing was had and a decree rendered thereon, the temporary injunction had completely served its purpose and ceased to be. In its stead there arose the injunction based on the solemn adjudication of the court on the merits of the case, and the injuries, if any, which from then on were suffered were such as were *damnum absque injuria*.

Counsel have cited a number of decisions that adopt a contrary view, but we think these decisions are not in consonance with our statute and are out of harmony with the general rule, which as stated in 32 C. J. § 695 (Injunctions) is as follows: ''Where a decree for a perpetual injunction is rendered, the order for a preliminary injunction is merged and ceases to have any further effect.'' It follows that, so much of the decree of the trial court as denied the items of damage accruing subsequent to September 25, 1928, the date of the final injunction, will be sustained. However, as it seems that the testimony was not directed to that point, we are unable to say whether any damage was sustained within the life of the temporary injunction, and the cause will therefore be remanded with directions, if the appellant so wills, to take additional testimony relating to the damage, if any, which under our view is recoverable.

We deem it well to say that we are of the opinion that the rule relative to the recovery of attorneys' fees as damages is in no wise changed. We adhere to the doc-

trine announced in the case of *Oliphint* v. *Mansfield & Co.*, 36 Ark. 191, for the reason stated in *Oelrichs* v. *Spain,* 15 Wall. 211. The cause is therefore remanded for such other and further proceedings as the parties may elect in conformity with the law and not inconsistent with this opinion.