LEEK *v.* BRASFIELD.

5-918                                     290 S. W. 2d 632

Opinion delivered April 30, 1956.

[Rehearing denied June 18, 1956.]

*Brockman & Brockman,* for appellant.

*Daggett & Daggett,* for appellee.

GEORGE ROSE SMITH, J. This action was brought by the appellee to recover damages for the inundation of his farm in Desha County. The complaint asserts that the flooding of the land was due to the defendant's wrongful conduct in preventing the repair of a dam that protected the plaintiff's farm. The jury awarded damages to the plaintiff in the amount of $550. The basic question in the case is whether the defendant's conduct amounted to an actionable wrong.

The plaintiff's land lies a mile or more below the defendant's farm on a drainage canal constructed by Cypress Creek Drainage District. At a point between the two farms, where the artificial drain leaves the bed of Cypress Creek, the district long ago constructed a dam across the creek bed in order to divert the water into the canal. In the spring of 1953 some unknown person cut this dam. The cutting of the dam was beneficial to the defendant, as it provided an additional channel for the escape of water that might otherwise have backed onto his property. But the breach in the dam was detrimental to the plaintiff, whose lower land was exposed to the danger of the flood water's coming through the gap in the dam.

The plaintiff and another landowner, R. B. Stimson, asked the commissioners of the district to repair the dam. The commissioners, feeling that it was the district's duty to mend the break, authorized Stimson to employ a con-

tractor to do the work.  Stimson arranged for W. A. Spradlin to repair the dam.

Spradlin proceeded toward the dam site with a piece of heavy equipment that had cost some thirteen thousand dollars.  As Spradlin was making a preliminary survey of his task he met the defendant; upon this encounter the plaintiff bases his cause of action.  The jury were warranted in believing that the defendant threatened to tie up Spradlin's expensive equipment in a court proceeding if Spradlin went forward with the project.  Spradlin, who considered the job a minor undertaking that he had accepted as an accommodation to the landowners, yielded to the defendant's threats and abandoned the work.  Within a month or so there were heavy rains which flooded the plaintiff's lands.  There is evidence to show that the damage would not have occurred if the dam had been repaired.

The appellant first argues that Spradlin's attempt to mend the break was illegal and might in fact have been enjoined if suit had been filed.  This contention is without merit.  The district was undoubtedly authorized by law to repair the damage to its drainage system.  The commissioners, instead of attending to the matter themselves, duly empowered Stimson to employ someone to do the work.  We perceive nothing in this situation giving rise to any cause of action on the appellant's part.

It seems plain that the appellant did not have an unqualified privilege either to obtain an injunction or to threaten to do so.  "Litigation and the threat of litigation are powerful weapons. . . . The use of these weapons of inducement is ordinarily unprivileged if the actor has no belief in the merit of the litigation or if, though having some belief in its merit, he nevertheless institutes or threatens to institute the litigation in bad faith, intending only to harass the third parties and not to bring his claim to definitive adjudication."  Rest., Torts, § 767, Comment b.  If the appellant had actually brought the suit, maliciously and without probable cause, he would have exposed himself to liability in damages

for malicious prosecution. *Harr* v. *Ward,* 73 Ark. 437, 84 S. W. 496; *Citizens' Pipe Line Co.* v. *Twin City Pipe Line Co.,* 183 Ark. 1006, 39 S. W. 2d 1017.

In insisting that he was at liberty to threaten to file a lawsuit the appellant cites cases holding that such threats do not constitute duress and should be resisted by a man of ordinary firmness. This argument, however, merely shows that the appellant's conduct may not have been a tort of which Spradlin could have complained; it does not reach the issue of whether that conduct resulted in an actionable injury to the appellee.

It is our opinion that the court properly submitted the issue to the jury. It cannot be doubted that the appellee could have asserted a cause of action against whoever actually cut the dam. The wrongful act of preventing repair was just as injurious to the appellee as the wrongful act of cutting. On this point we adopt the reasoning followed in *Parrish* v. *Parrish,* 21 Ga. App. 275, 94 S. E. 315. There two trees on the defendant's land had been blown over by high winds and had fallen across a stream, forming a barrier that gradually obstructed the natural flow of the water. The plaintiff, who owned the adjoining land upstream, asked that the trees be removed, but the defendant refused either to remove them or to allow the plaintiff to do so. A heavy rain fell and resulted in the plaintiff's land being flooded. The court held that a cause of action existed, upon the theory that even though the original obstruction was not chargeable to the defendant his subsequent conduct amounted to a tortious maintenance of the condition.

The appellant pretty well concedes that he could not lawfully have used physical violence to prevent the repair of the dam, but he argues that it was permissible for him to achieve his purpose by the use of words alone. From the plaintiff's point of view, however, it makes no difference which method was followed to accomplish the intended result. The tort lies in the fact that the defendant's deliberate intermeddling kept the dam from being mended. "One who, without a privilege to do so, inten-

tionally prevents a third person from giving to another aid necessary to his bodily security, is liable for bodily harm caused to the other by the absence of the aid which he has prevented the third person from giving." Rest., Torts, § 326. While the quoted statement is limited to torts resulting in bodily harm the same principle is applicable to cases involving damage to property. Rest., 1948 Supplement, Torts, § 497.

It is suggested that the elapse of a month between the defendant's wrongful conduct and the actual injury to the plaintiff should prevent recovery. This suggestion involves questions of proximate cause and of the plaintiff's duty to take additional measures to protect his land. There was no request below that these matters be submitted to the jury, and we are not willing to say as a matter of law that the short time interval was fatal to the plaintiff's right of recovery.

On the principal issue in the case it is our conclusion that the plaintiff's proof presented a question for the jury. With respect to the appellant's other contentions we find no error in the admission of certain testimony or in the giving of an instruction requested by the plaintiff.

Affirmed.

ROBINSON, J., dissents.

SAM ROBINSON, Associate Justice. I dissent, for the reason that I do not believe a mere threat of filing a lawsuit, such as the one appellant suggested, is actionable.

The appellee Brasfield was the plaintiff in the Circuit Court. He alleged that he had been damaged by water overflowing his land due to a break in a dam or levee, and that the appellant Leek is liable for such damages because he had, by threats, prevented Spradlin from repairing the levee. At the trial, it developed that the alleged threat consisted of Leek, in effect, telling Spradlin, the contractor engaged to do the repair work, that he (Leek) was going to be damaged if the break was repaired; that he did not believe Spradlin had a legal right

to repair the levee, and that if. he persisted.in doing so a lawsuit would be filed against him.. The evidence further developed that before Leek expressed his final views to Spradlin, he conferred with his attorney.

Leek made no threat of any physical violence. In fact, he instructed Spradlin as to the road to take in order to get to the break in the levee. Leek's language was not abusive nor insulting; by no process of the imagination can his words to Spradlin be construed to mean that he threatened to do anything other than what he had a legal right to do, and that was, to seek redress in the courts for any damages he might sustain. Even if Leek's threat to take the matter to court should be considered as morally wrong in the circumstances, it would not give rise to a cause of action. In *Cooley on Torts,* 4th Edition, page 4, it is said: "An act or omission may be wrong in morals, or it may be wrong in law. It is scarcely necessary to say that the two things are not interchangeable. No government has undertaken to give redress whenever an act was found to be wrong, judged by the standard of strict morality; nor is it likely that any government ever will." So far as I have been able to ascertain, this is the first time any court has held that a threat to file a lawsuit, in itself, gives rise to a cause of action.

In *17 American Jurisprudence,* page 892, § 17, it is said: "It is the well-established general rule that it is not duress to institute or threaten to institute civil suits, or take proceedings in court, or for any person to declare that he intends to use the courts wherein to insist upon what he believes to be his legal rights. It is never duress to threaten to do that which a party has a legal right to do, and the fact that a threat was made of a resort to legal proceedings to collect a claim which was at least valid in part constitutes neither duress nor fraud such as will avoid liability on a compromise agreement."

Appellee takes the position that, since Leek threatened to test the issue in the courts, he, appellee, had the right to let the break in the levee go unrepaired, wait for the water to overflow his land, and then make Leek pay

for the damages merely because Leek threatened to appeal to the courts for the enforcement of any rights he had. In the future, when anyone is threatened with a lawsuit, in the event he takes certain action, he can safely refrain from doing the act, whatever it may be, and if he is thereby damaged, he can then collect from the one who threatened litigation.

The established law that a threat of litigation in itself does not give rise to a cause of action should not be disposed of by saying that this law applies to Spradlin but does not affect Brasfield. Spradlin was the contractor employed to do the work. If he had no cause of action against Leek because of the threat to file a lawsuit, Brasfield certainly had no cause of action because of the alleged threat. There is no contention that Brasfield was not fully informed as to everything that transpired; sufficient time elapsed between the threat of litigation made by Leek and the time the land was overflowed that Brasfield could have taken any action he might have desired to enforce any rights he had.

If the threat by Leek is not actionable, then Brasfield has no cause of action, because a threat of filing suit is all that Leek did. Ordinarily, a mere threat is not actionable. In *Cooley on Torts,* 4th Edition, page 35, it is said:

"A threat to commit an injury is also sometimes made a criminal offense, but except in cases where a threatening gesture may constitute an assault, it is not an actionable private wrong. Damages cannot be recovered for a mere threatened injury. Many reasons may be assigned for distinguishing between this case and that of an assault, one of them being that the threat only promises a future injury, and usually gives ample opportunity to provide against it, while an assault must be resisted on the instant. But the principal reason, perhaps, is found in the reluctance of the law to give a cause of action for mere words. Words never constitute an assault, is a time honored maxim. Words may be thoughtlessly spoken; they may be misunderstood; they may have indicated to the person threatened nothing but momentary spleen or

anger, though when afterward reported by witnesses they seem to express deliberate malice and purpose to injure. Even when defamation is complained of the law is very careful to require something more than expressions of anger, reproach, or contempt, before it will interfere; justly considering that it is safer to allow too much liberty than to interpose too much restraint. And comparing assaults and threats, another important difference is to be noted: In the case of threats, as has been stated, preventive remedies are available; but against an assault there are usually none beyond what the party assaulted has in his power of physical resistance.''

In *52 American Jurisprudence,* page 380, it is said: ''A mere threat to commit an injury is not an actionable private wrong, since it is only the promise of doing something which in the future may be injurious, and may never be carried into effect.''

In a note on the subject in 5 A. L. R. 1287 it is said: ''It will be observed that it is held in the reported case [*Brooker* v. *Silverthorne,* 111 S. C. 553, 99 S. E. 350, 5 A. L. R. 1283] that an action will not lie for merely abusive language nor for language of a threatening nature unless it was such as to put a person of ordinary reason and firmness in fear of bodily hurt.''

''Because a person has a right to threaten to do that which he has a right to do, a threat to bring an action to enforce a lawful demand, or one which he in good faith believes to be lawful, does not constitute duress.'' *Wise* v. *Midtown Motors,* 231 Minn. 46, 42 N. W. 2d 404, 20 A. L. R. 2d 735.

The majority opinion cites *Parrish* v. *Parrish,* 21 Ga. App. 275, 94 S. E. 315, but, when the facts in that case are considered, it will be seen that there is not much similarity between that case and the one at bar. There, a stream became clogged by fallen trees, and the property owner would not remove the obstruction nor permit his neighbor to do so. As a result, the water backed up on the neighbor's property. Refusal of the owner of the property where the obstruction existed to permit his neighbor to

come on the land to remove the trees from the water amounted to an affirmative wrongful act. The court stressed the point that one who is injured in his riparian rights may recover damages therefor. Of course, the neighbor would not dare go on the land without permission. He would have been guilty of trespassing, and might have been met with physical violence. Here, of course, Leek had no right to physically prevent the repairing of the levee, and he made no threat of any such attempt; he merely said he was going to court to enforce whatever rights he might have. Although he may have lost his case in court, there would be no actionable wrong in his bringing suit; no malice on his part is alleged or proved.

The majority opinion cites *Restatement, Torts,* § 326, as authority for the proposition that one may be liable for preventing another from going to the aid of one in trouble, and cites *Restatement, Torts,* 1948 Supplement, § 497, to the effect that the rule also applies to cases involving damage to property; however, in my opinion, the cited authority does not imply that a cause of action may be based on a threat to bring a legal cause of action.

Appellant Leek had a perfectly legal right to file a suit to prevent the repair of the levee. He did not threaten to do anything other than what he had a legal right to do. This court said, in *Ellis* v. *First National Bank of Fordyce,* 163 Ark. 471, 260 S. W. 714: "It is not duress to threaten to do that which a party has a legal right to do, and the fact that a party threatens to bring suit to collect a claim constitutes neither duress nor fraud, and a compromise of such a claim is binding in law."

And the court said, in *Vick* v. *Shinn,* 49 Ark. 70, 4 S. W. 60: "If there is in fact a cause of action when the threat is made, the plaintiff, by bringing suit, would only enforce a legal right; if there was no cause of action . . . . , the party threatened should exercise the ordinary degree of firmness which the law presumes every man to possess, and meet the issue of the unjust suit. One cannot be heard to say that he had the law with him, but feared to meet his adversary in court."

That is exactly what has happened here. The appellee says, in effect: We have the law with us. Leek had no legal right to prevent the closing of the gap in the levee, but, since he threatened to file suit, we were afraid to meet him in court.