JOSEPH GOMES ET AL. *v.* COMMERCIAL UNION
INSURANCE COMPANY ET AL.
(SC 16457)

Sullivan, C. J., and Norcott, Katz, Vertefeuille and Zarella, Js.

Argued March 14—officially released November 20, 2001

*Leonard M. Isaac*, with whom were *Louis A. Highmark, Jr.*, and, on the brief, *James P. Brennan*, for the appellants (plaintiffs).

*John W. Lemega*, with whom, on the brief, were *Stephen H. Broer, John B. Farley* and *Bruce H. Raymond*, for the appellees (defendants).

*Opinion*

ZARELLA, J. The primary issue in this appeal is whether, under the circumstances of this case, the defendants owed a duty to the plaintiffs to refrain from preventing a third person from rendering aid to prevent damage to the plaintiffs' property. The plaintiffs, Joseph Gomes, Marguerite Gomes, Vic's Automotive Service, Inc., and Victor Mathieu brought an action in five counts against the defendants, Arnold Chase, Lawrence Perl, Michael Perl, Roger Freedman and West Hartford Motel Associates (hotel defendants), and Commercial Union Insurance Company (Commercial Union). The plaintiffs alleged in the first count that Lanita Carter, who was employed by the hotel defendants and allegedly acting

within the scope of her employment as a desk clerk,[1] negligently prevented a hotel guest from "rendering aid to the plaintiffs . . . ." In the second count, the plaintiffs alleged that the desk clerk, acting within the scope of her employment with the hotel defendants, intentionally prevented that guest from "rendering . . . aid to the plaintiffs . . . ." The plaintiffs alleged in the third count that, as a result of the desk clerk's acts or omissions, the hotel defendants violated the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. In the fourth count of their complaint, the plaintiffs alleged negligent infliction of emotional distress on the part of all defendants owing to a letter sent to the plaintiffs by Commercial Union. In the fifth and final count, the plaintiffs alleged a violation of CUTPA on the part of all defendants as a result of the letter that formed the basis for the fourth count.

The defendants moved for summary judgment on all counts.[2] The trial court granted the defendants' motions and rendered judgment in favor of the defendants, from which the plaintiffs appealed to the Appellate Court. We transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

On appeal, the plaintiffs press only their claims of intentional and negligent prevention of the rendering of aid as to the hotel defendants and their negligent infliction of emotional distress and CUTPA claims as to Commercial Union. We reject the plaintiffs' claims and, accordingly, affirm the judgment of the trial court.

The following undisputed facts are relevant to this appeal. At or about 11:30 p.m. on Sunday, May 21, 1995,

[1] We hereinafter refer to Carter as the desk clerk.

[2] The hotel defendants and Commercial Union filed separate motions for summary judgment. Inasmuch as Commercial Union was implicated only in counts four and five of the plaintiffs' complaint, its motion for summary judgment was limited to those counts.

a guest at the West Hartford Inn (hotel) heard the sound of breaking glass and went to the window in her room to see what had caused the noise. The guest believed that she had observed someone breaking into the plaintiffs' gas station located immediately adjacent to the hotel. Thereafter, the guest contacted the desk clerk at the hotel so that the police would be notified. The desk clerk informed the guest she would "take care of it," and that the gas station was equipped with an alarm system through which the police would be notified of any attempted break-in. The guest believed that she had done all that she needed to do for the police to be contacted and returned to bed. Contrary to the desk clerk's statement, however, the plaintiffs' gas station was not equipped with an alarm system. Subsequently, other hotel guests smelled smoke, and they also notified the desk clerk, who did not notify the police or fire department. The plaintiffs' property sustained damage as a result of the break-in and a fire, which later was determined to be caused by arson. The hotel also was damaged by smoke from the fire on the plaintiffs' property.

On July 13, 1995, Commercial Union, the hotel's insurer, sent a letter addressed to the plaintiffs' gas station seeking reimbursement from the plaintiffs for an insurance claim that it had paid as a result of damage to the hotel caused by the smoke from the fire on the plaintiffs' property.[3] Additional facts will be provided as necessary.

---

[3] That letter provided in relevant part: "Our insured alleges that the damage to his building/property in a recent accident was solely a result of your negligence.

"We have paid his claim for $21,140.89 and we are now coming to you for reimbursement of this cost. ($20,140.89 + $1,000 deductible).

"If you are insured, we suggest that you send this letter to your insurance company. Please use the enclosed envelope to tell us your policy number and the name of your insurance company so that we too may contact them.

"If you are not insured, please call [us] . . . so that we can make the necessary arrangements without the expense or involvement of formal legal procedures. . . ."

I

Prior to considering the plaintiffs' substantive claims, we address the standard of review governing each of those claims. Pursuant to Practice Book § 17-49, summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." On appeal, the plaintiffs do not challenge the trial court's conclusion that there are no material facts in dispute. Thus, each of the plaintiffs' claims raises only questions of law. This court subjects questions of law on appeal to plenary review. See, e.g., *Hartford Electric Supply Co.* v. *Allen-Bradley Co.*, 250 Conn. 334, 367, 736 A.2d 824 (1999); *United Technologies Corp.* v. *Groppo*, 238 Conn. 761, 767, 680 A.2d 1297 (1996).

The plaintiffs first claim that the trial court improperly rendered summary judgment in favor of the hotel defendants on the first and second[4] counts of the plaintiffs' complaint "because the [court] misfocused its attention on the lack of a special relationship between the plaintiffs and the defendants . . . ." The plaintiffs argue that the trial court improperly concluded that Connecticut law does not provide a remedy to a plaintiff whose property sustains damage as a result of a defendant's prevention of a third party from aiding the plaintiff. We disagree.

---

[4] The plaintiffs alleged intentional misconduct on the part of the hotel defendants in the second count of their complaint, including an intentional decision "not to undertake steps required . . . [under the] Connecticut Fire Safety Code . . . ." This argument was not briefed by the plaintiffs and, therefore, we do not address it. See, e.g., *Ham* v. *Greene*, 248 Conn. 508, 528–29 n.11, 729 A.2d 740, cert. denied, 528 U.S. 929, 120 S. Ct. 326, 145 L. Ed. 2d 254 (1999).

The plaintiffs urge us to adopt §§ 326[5] and 327[6] of the Restatement (Second) of Torts, made applicable to claims involving property damage through the operation of § 497 of the Restatement (Second) of Torts,[7] as bases upon which to impose liability for interfering with a person attempting to render aid. The plaintiffs acknowledge that these sections of the Restatement (Second) of Torts previously have not been adopted in Connecticut.

The defendants argue that there is no public policy in Connecticut supporting the imposition of liability under §§ 326 and 327. Alternatively, the defendants argue that, even if we were to adopt §§ 326 and 327, these sections would not apply to this case because the desk clerk's actions did not prevent the guest from rendering aid to the plaintiffs.

A

We first address the plaintiffs' claim that, pursuant to § 326 of the Restatement (Second) of Torts, the hotel defendants should be held liable for the damage to the plaintiffs' property on the basis of the desk clerk's

[5] Section 326 of the Restatement (Second) of Torts provides: "One who intentionally prevents a third person from giving to another aid necessary to prevent physical harm to him, is subject to liability for physical harm caused to the other by the absence of the aid which he has prevented the third person from giving." 2 Restatement (Second), Torts § 326, pp. 145–46 (1965).

[6] Section 327 of the Restatement (Second) of Torts provides: "One who knows or has reason to know that a third person is giving or is ready to give to another aid necessary to prevent physical harm to him, and negligently prevents or disables the third person from giving such aid, is subject to liability for physical harm caused to the other by the absence of the aid which he has prevented the third person from giving." 2 Restatement (Second), Torts § 327, p. 146 (1965).

[7] Section 497 of the Restatement (Second) of Torts provides: "The rules which determine the negligence of conduct threatening harm to another's interest in the physical condition of land and chattels are the same as those which determine the negligence of conduct which threatens bodily harm." 2 Restatement (Second), Torts § 497, p. 582 (1965).

*intentional* prevention of the hotel guest from rendering assistance to the plaintiffs.[8] We begin our analysis by considering the issue of whether the desk clerk *prevented* the hotel guest from rendering aid as that term is used in the Restatement. We conclude that the desk clerk did not prevent the guest from rendering aid.

Because the Restatement does not define the word "prevents," we first look to the scope note, illustration and comment accompanying § 326 for guidance. A scope note introduces each topic of the Restatement (Second) of Torts and purports to define the parameters of the sections covered by the topic that it accompanies. The scope note introducing the topic of prevention of assistance by third persons, of which § 326 is a part, provides that "[t]he actor can prevent a third person from rendering aid to another in many ways including the following: first, by so injuring the third person as to make him incapable of giving aid; second, by interfering with his efforts to give aid; third, by injuring or destroying the usefulness of a thing which the third person is using to give aid or by otherwise preventing him from using it; [and] fourth, by obstructing the third person's access to the other." 2 Restatement (Second), Torts p. 145 (1965) (scope note accompanying §§ 326 through 328). These examples define prevention by attempting, in general terms, to show ways in which prevention can be accomplished. The first, third and fourth examples contemplate that the actor physically stops the third

---

[8] There is some support for the proposition that § 326 of the Restatement (Second) of Torts, which, by its terms, is limited to claims involving bodily injury; see footnote 5 of this opinion; also applies to claims involving property damage by virtue of § 497 of the Restatement (Second) of Torts. *Leek* v. *Brasfield*, 226 Ark. 316, 320, 290 S.W.2d 632 (1956); see footnote 7 of this opinion and accompanying text. We need not decide for purposes of the present case, whether § 497 renders § 326 applicable to claims involving property damage, however. Even if we were to assume that it does, we conclude that the plaintiffs have failed to allege facts sufficient to sustain a cause of action under § 326.

person from rendering aid or compromises the efficacy of an item used in rendering aid. The second example contemplates interference with a person's efforts to render aid. This example appears to require active intervention on the part of the actor to prevent aid from being rendered.

We look next to the illustration accompanying § 326. It provides: "A prevents the fire department from using a fireplug in front of A's premises for the purpose of putting out a fire in B's house. This A does under an unfounded claim that he is entitled to the entire supply of water from the plug. In consequence, the fire department is unable to put out the fire and B, while carefully attempting to rescue from his house some valuable chattels, is injured. A is subject to liability to B." Id., § 326, p. 146, illustration (1). This illustration does not focus on the meaning of the word "prevents" in § 326 and thus offers little help in determining the scope or nature of the word "prevents" as contemplated by the drafters of the Restatement. The illustration contains no facts revealing how A prevented the fire department from using the fire hydrant. Finally, the comment accompanying § 326 offers no guidance as to the drafters' contemplation of the meaning of the word "prevents." See generally id., § 326, p. 146, comment (a). Having examined the Restatement and its supportive and explanatory materials, we next look at other sources for guidance.

Merriam-Webster's Dictionary defines "prevent" as "to deprive of power or hope of acting or succeeding . . . to keep from happening or existing . . . [or] to hold or keep back . . . ." Merriam-Webster's Collegiate Dictionary (10th Ed. 1993). These definitions suggest that the word "prevent" means to cause an inability to accomplish or succeed at a task attempted.

Finally, we look to the case law of other jurisdictions that have considered adopting § 326. The plaintiffs rely

on *Leek* v. *Brasfield*, 226 Ark. 316, 290 S.W.2d 632 (1956), and *Commonwealth* v. *Marcelli*, 14 Mass. App. 567, 441 N.E.2d 270 (1982), in support of their claim that we should adopt § 326 under the facts of the present case. These cases would seem to support the adoption of § 326 and also serve to define further the meaning of the word "prevents" as it is used in § 326.

In *Leek*, a dam was damaged, and a third party—supposedly an owner of land adjacent to that of the plaintiff—engaged a contractor to repair the damage so that excess storm water runoff would flow into an established drainage system. *Leek* v. *Brasfield*, supra, 226 Ark. 317–18. The defendant, an upstream landowner, prevented the contractor from entering his land to repair the dam by threatening to sue the contractor and "tie up [the contractor's] expensive equipment in a court proceeding if [the contractor] went forward with the project." Id., 318. The contractor "yielded to the defendant's threats and abandoned the work." Id. Approximately one month later, there was heavy rain, and storm water runoff from that rain did not flow into the drainage system, but through the breach in the dam. Id. As a result, flooding caused damage to the plaintiff's land, and the defendant was held liable for that damage because his threat of legal proceedings prevented the contractor from repairing the dam. See id., 319–20.[9]

In *Marcelli*, the defendant physically prevented the victim's girlfriend from obtaining aid for the victim who, as a result of ingesting drugs, "was lying on the floor [and] breathing erratically . . . ." *Commonwealth* v. *Marcelli*, supra, 14 Mass. App. 568. The victim's girl-

---

[9] Although *Leek* was decided before the publication of the Restatement (Second) of Torts, the opinion cites to § 326 of the first Restatement of Torts, which restates essentially the same rule restated in § 326 of the Restatement (Second) of Torts. *Leek* v. *Brasfield*, supra, 226 Ark. 319–20; see 2 Restatement of Torts § 326, p. 884 (1934).

friend attempted to call for an ambulance, but the defendant physically pushed her away from the telephone and threatened to kill her if she made any further attempts to obtain aid. Id. The defendant stated to the victim's girlfriend that he would take care of the victim and that he did not want the police to intervene because of his substantial police record of involvement with narcotics and his possession of drugs and drug paraphernalia. Id. In response to the defendant's threat, the victim's girlfriend left the apartment, came back the next day and discovered that the victim had died. Id. Relying in part on § 326 of the Restatement (Second) of Torts, the court in *Marcelli* characterized the defendant's conduct in preventing aid as wanton and reckless. Id., 568–69.

Finally, in *Keesee* v. *Freeman*, 772 S.W.2d 663 (Mo. App. 1989), security officers at a professional baseball game ejected the plaintiff, who was intoxicated, from the ballpark. Id., 665. One of the plaintiff's companions "sought the permission of the officers to call a cab for [the plaintiff], but that [request] was refused because the officers told [the companion] that [the plaintiff] was under arrest." Id., 667–68. The plaintiff ended up in the parking lot area outside the ballpark and, subsequently, was abducted and sexually assaulted. Id., 665. The plaintiff sought to recover pursuant to § 326 of the Restatement (Second) of Torts, alleging that the officers intentionally interfered with her companion's efforts to render assistance. Id., 667–68. Missouri courts had not before recognized a cause of action pursuant to § 326; id., 668; and the court held that, even if it were to do so, "[the plaintiff's] proof did not satisfy the minimum requisites for presentation of a cause of action under [§ 326]." Id. The court reasoned that § 326 applies only when there is an "active intervention by the defendant to thwart the efforts of a rescuer"; id.; and the actions of the officers did not rise to that level. See id.

The foregoing sources suggest that the term "prevents," as used in § 326, requires active intervention by the person allegedly interfering with the third party attempting to render aid, that has the effect of altering, impeding or completely thwarting the efforts of the third party. In *Leek*, the landowner's threat of taking legal action to encumber the contractor's equipment was sufficient to cause the contractor to abandon the project of repairing the dam. *Leek* v. *Brasfield*, supra, 226 Ark. 319. In *Marcelli*, the defendant's physical intervention and death threat were sufficient to cause the victim's girlfriend to cease any further attempts at aiding the victim. *Commonwealth* v. *Marcelli*, supra, 14 Mass. App. 568. In *Keesee*, the court concluded that the Restatement applies "only when there is a real and immediate threat of bodily harm and active intervention by the defendant to thwart the efforts of a rescuer." *Keesee* v. *Freeman*, supra, 772 S.W.2d 668.

In the present case, the desk clerk informed the guest that she would "take care of" things and that the gas station was equipped with an alarm system through which the police would be notified in the event that a break-in was occurring. The actions of the desk clerk did not rise to the level of the actions of the persons who were found to have prevented a third party from rendering aid in the cases cited by the plaintiffs and in the illustration accompanying § 326 of the Restatement (Second) of Torts. The desk clerk did not physically prevent the guest from using the telephone in her room and did not threaten the guest with bodily harm or a lawsuit if she persisted in her efforts to contact the police. There was no active intervention on the part of the desk clerk that prevented the guest from calling the police. Consistent with the common definition of the term "prevent," the guest was not unable to succeed in her attempt to summon aid for the plaintiffs. In fact, the guest stated in her affidavit that she eventually

called the police department directly. This fact belies the argument that the desk clerk prevented the guest from rendering aid.

We conclude that, under the particular facts of this case, the desk clerk's statements to the guest did not satisfy the minimum requirements necessary to sustain a cause of action under § 326 of the Restatement (Second) of Torts for intentionally preventing a third party from rendering aid.[10] Thus, the application of § 326 to the facts of the present case is unavailing to the plaintiffs.

### B

We next consider the plaintiffs' claim that we should recognize a cause of action for the *negligent* prevention or disabling of a person from rendering aid. In support of this claim, the plaintiffs urge the adoption of § 327 of the Restatement (Second) of Torts.

This claim requires us to determine whether a duty exists to use care to avoid negligently preventing a person from rendering aid to another. The existence of a duty of care is a prerequisite to a finding of negligence. E.g., *Maffucci* v. *Royal Park Ltd. Partnership*, 243 Conn. 552, 566, 707 A.2d 15 (1998) ("[t]he essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury" [internal quotation marks omitted]). "The existence of a duty is a question of law and only if such a duty is found to exist does the trier of fact then determine whether the defendant [breached] that duty in the particular situation at hand." (Internal quotation marks omitted.) *Mendillo* v. *Board of Education*, 246 Conn. 456, 483, 717 A.2d 1177 (1998). "If a court deter-

---

[10] We emphasize that we are neither rejecting nor accepting § 326 of the Restatement (Second) of Torts as part of Connecticut's jurisprudence inasmuch as the facts of this case are not sufficient, as a matter of law, to sustain a cause of action under that section.

mines, as a matter of law, that a defendant owes no duty to a plaintiff, the plaintiff cannot recover in negligence from the defendant." *RK Constructors, Inc.* v. *Fusco Corp.*, 231 Conn. 381, 384–85, 650 A.2d 153 (1994).

"Duty is a legal conclusion about relationships between individuals, made after the fact, and imperative to a negligence cause of action. The nature of the duty, and the specific persons to whom it is owed, are determined by the circumstances surrounding the conduct of the individual. . . . Although it has been said that no universal test for [duty] ever has been formulated . . . our threshold inquiry has always been whether the specific harm alleged by the plaintiff was foreseeable to the defendant. The ultimate test of the existence of the duty to use care is found in the foreseeability that harm may result if it is not exercised. . . . By that is not meant that one charged with negligence must be found actually to have foreseen the probability of harm or that the particular injury which resulted was foreseeable, but the test is, would the ordinary [person] in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result? . . .

"A simple conclusion that the harm to the plaintiff was foreseeable, however, cannot by itself mandate a determination that a legal duty exists. Many harms are quite literally foreseeable, yet for pragmatic reasons, no recovery is allowed. . . . A further inquiry must be made, for we recognize that duty is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection. . . . While it may seem that there should be a remedy for every wrong, this is an ideal limited perforce by the realities of this world. . . . The problem for the law is to limit the legal consequences of wrongs to a controllable degree." (Internal quotation marks omitted.) *Lombard* v.

*Edward J. Peters, Jr., P.C.*, 252 Conn. 623, 632–33, 749 A.2d 630 (2000), quoting *Clohessy* v. *Bachelor*, 237 Conn. 31, 45–46, 675 A.2d 852 (1996).

"We have stated that the test for the existence of a legal duty of care entails (1) a determination of whether an ordinary person in the defendant's position, knowing what the defendant knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result, and (2) a determination, on the basis of a public policy analysis, of whether the defendant's responsibility for its negligent conduct should extend to the particular consequences or particular plaintiff in the case." (Internal quotation marks omitted.) *Lodge* v. *Arett Sales Corp.*, 246 Conn. 563, 572, 717 A.2d 215 (1998).

In *RK Constructors, Inc.* v. *Fusco Corp.*, supra, 231 Conn. 381, we concluded that, "[i]n the absence of a controlling statute or overriding public policy consideration . . . the economic harm to the plaintiff . . . was simply too remote to be chargeable to the defendant third party tortfeasor . . . ." Id., 388. In so concluding, we also relied on "the measure of attenuation between [the third party tortfeasor's] conduct, on the one hand, and the consequences to and the identity of the plaintiff, on the other hand." Id., 387.

As in *RK Constructors, Inc.*, there is no overriding public policy or statute that compels this court to extend liability based on the facts of the present case. We find no statute or articulated policy reason to hold the defendants liable on the basis of the desk clerk's statements to the hotel guest and subsequent inaction when the guest informed the desk clerk that she had heard breaking glass. The damage to the plaintiffs' property was caused by the conduct of the person or persons who perpetrated the criminal activity, not by the action or inaction of the desk clerk. The attenuation between

the hotel defendants' conduct and the plaintiffs' harm is too remote, as a matter of public policy, to impose a duty. See, e.g., *First Federal Savings & Loan Assn. of Rochester* v. *Charter Appraisal Co.*, 247 Conn. 597, 607, 724 A.2d 497 (1999) (nexus between appraisal and general decline in market value too attenuated); *Waters* v. *Autuori*, 236 Conn. 820, 836, 676 A.2d 357 (1996) (nexus between accounting standards promulgated by professional regulatory body and investor's economic loss insufficient to impose duty of care).

Our determination that no duty exists in the present case also is consistent with our decision in *Lodge* v. *Arett Sales Corp.*, supra, 246 Conn. 578–81, in which we declined to extend liability on the basis of public policy reasons. We noted that the defendant was not the primary cause of the accident and cautioned that "[i]mposing liability for consequential damages often creates significant risks of affecting conduct in ways that are undesirable as a matter of [public] policy." (Internal quotation marks omitted.) Id., 579. Moreover, we emphasized that the "policy [goals] of the tort compensation system . . . [namely] compensation of innocent parties, shifting the loss to responsible parties or distributing it among appropriate entities, and deterrence of wrongful conduct"; id., 578–79; would not be met by imposing liability in that case. See id., 579.

The plaintiffs rely heavily on *Boston Fish Market Corp.* v. *Universal Ins. Co.*, 388 F.2d 773 (1st Cir. 1968), to support their claim that we should adopt § 327 of the Restatement (Second) of Torts. In *Boston Fish Market Corp.*, a fishing vessel, which was located at a pier owned by the respondent, Boston Fish Market Corporation, caught fire. Id., 774. In a situation very similar to that described in illustration 3 of § 327; see 2 Restatement (Second), supra, § 327, p. 147, illustration (3); the respondent, which was responsible for maintaining several fire hydrants on its pier, turned off a

fire hydrant located near the fishing vessel, rendering that hydrant inoperable at the time of the fire. *Boston Fish Market Corp.* v. *Universal Ins. Co.*, supra, 774. The respondent had informed neither the vessel owners nor the fire department of its actions. Id. The inoperable fire hydrant prevented firefighters from delivering water to the fire in a timely manner. Id., 774–75. The court relied on § 327 in concluding that "one who knowingly interferes with fire-fighting operations" is liable for property damage caused thereby. Id., 777.

*Boston Fish Market Corp.* is distinguishable from the present case. In the present case, the desk clerk did not turn off, or render inoperable, the guest's telephone and thus prevent the guest from rendering aid.

In the present case, overall tort law policy goals would not be served by imposing liability. If we were to shift the cost of the plaintiffs' harm onto the defendants on the basis of the desk clerk's statements to the hotel guest, we would be shifting the loss to parties who were not responsible for the plaintiffs' property damage. We note that our determination that public policy reasons militate against imposing a duty of care on the hotel defendants is a fact-bound determination and pertains only to the specific facts of this case.[11] See, e.g., *Lodge* v. *Arett Sales Corp.*, supra, 246 Conn. 585 n.16.

## II

The plaintiffs also claim that the trial court improperly rendered summary judgment as to their allegation of negligent infliction of emotional distress as a result

---

[11] Because we determine that no duty of care existed on the basis of our analysis of the public policy prong—the second prong—of the test for determining the existence of a duty; e.g., *Lodge* v. *Arett Sales Corp.*, supra, 246 Conn. 572; we need not perform an analysis under the foreseeability prong—the first prong—of that test. E.g., *Zamstein* v. *Marvasti*, 240 Conn. 549, 564 n.7, 692 A.2d 781 (1997).

of Commercial Union's act of sending a letter[12] to the plaintiffs demanding reimbursement for the cost of repairing the hotel as a result of damage caused by smoke from the fire at the plaintiffs' gas station. Commercial Union argues that, as a matter of law, it owed no duty to the plaintiffs and, therefore, could not have breached a duty that did not exist. We agree with Commercial Union.

In order to recover on a claim of negligent infliction of emotional distress, the plaintiff must prove that "the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that that distress, if it were caused, might result in illness or bodily harm." (Internal quotation marks omitted.) *Barrett* v. *Danbury Hospital*, 232 Conn. 242, 260, 654 A.2d 748 (1995).

It is clear that, on the basis of the language of the plaintiffs' complaint, the plaintiffs' claim in this regard is not that the letter itself was conduct giving rise to an unreasonable risk of harm, but, rather, that the plaintiffs were "particularly upset by the defendants' false accusations and threat of legal action because the plaintiffs had already suffered large uninsured losses, and both the plaintiffs and the defendants knew that the fire resulted from earlier conduct by the defendants' agent in preventing the [h]otel guest from rendering aid to the plaintiffs." According to the plaintiffs, "[t]he defendants knew or should have known that [their] assertions, statements and conduct . . . under the circumstances of this case . . . involved an unreasonable risk of causing the plaintiffs to suffer emotional distress . . . ."

Our determination that the desk clerk did not, as a matter or law, intentionally or negligently prevent the hotel guest from rendering aid to the plaintiffs is fatal to the plaintiffs' claim of negligent infliction of emotional

---

[12] See footnote 3 of this opinion.

distress. The plaintiffs recognize that the act of sending the letter itself was not unreasonable. They allege that the act of sending the letter, coupled with the knowledge of the intentional or negligent acts of the desk clerk,[13] constituted the actionable conduct. Because the plaintiffs have failed to persuade us on the issues of intentional and negligent prevention, they cannot prevail on their claim of negligent infliction of emotional distress.

### III

The plaintiffs' final claim is that the trial court improperly rendered summary judgment in favor of Commercial Union as to the fifth count of the plaintiffs' complaint, in which the plaintiffs alleged a violation of CUTPA. In count five of their complaint, the plaintiffs alleged, as they did in the previous count alleging negligent infliction of emotional distress, that the act of sending the letter, coupled with the knowledge that the desk clerk intentionally or negligently had prevented the hotel guest from rendering aid, constituted an unfair or deceptive trade practice.

Having determined that the conduct of the desk clerk was not actionable under either an intentional tort or negligence theory, we conclude that the plaintiffs' CUTPA claim similarly must fail because the factual predicate of the claimed unfair or deceptive act or practice, as required by General Statutes § 42-110b (a), does not exist.

The judgment is affirmed.

In this opinion the other justices concurred.

---

[13] The plaintiffs claim that Commercial Union was negligent in sending out its standard subrogation letter prior to the completion of its investigation. They claim that, if Commercial Union had waited, it would have learned of the desk clerk's intentional or negligent conduct. According to the plaintiffs, Commercial Union's haste in sending the letter formed the basis of the negligent infliction of emotional distress and CUTPA counts.