[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO STRIKE #121
The plaintiff, Michael Cirrito, filed an eleven count amended complaint on June 12, 2002, against the defendants, Crawford Company (Crawford) and Insura Property Casualty (Insura). In count one, which asserts a breach of contract claim against Crawford, the plaintiff alleges the following facts, all of which are incorporated or repeated in counts two through eleven. On or about January 14, 1999, the plaintiff sustained a back injury during the course of his employment with Resource Group Limited of Connecticut (Resource Group). At the time of the plaintiffs injury, Resource Group insured its worker's compensation liability through an insurance policy issued by Insura and administered by Crawford. In the course of administering the plaintiffs workers' compensation claims under the policy, Crawford, the agent and third party administrator for Insura, was adjudicated, after a formal hearing before the workers' compensation commissioner, as having engaged in a pattern of inappropriate claims administration.[1] The plaintiff, a third party beneficiary to the contact between Resource Group and Insura, suffered damages and monetary loss as a result of Crawford's breach of contact.
Count two alleges breach of contract against Insura. Count three alleges breach of the implied covenant of good faith and fair dealing against Crawford and Insura. Counts four and five allege claims of unfair settlement practices as defined in General Statutes § 38a-816 (6) against Insura and Crawford, respectively. Count six alleges a claim of an unfair trade practice in violation of General States § 42-110b
against Insura. Counts seven and eight allege negligence claims against Crawford and Insura, respectively. Counts nine and ten allege claims of negligent infliction of emotional distress against Insura and Crawford, respectively. Count eleven alleges a claim of intentional infliction of emotional distress against Crawford.
On July 3, 2002, Insura filed a motion to strike counts two, three, four, six, eight and nine of the plaintiffs amended complaint on the CT Page 16446 ground that "the plaintiffs claims for damages arising out of the defendant's alleged inappropriate administration of his claims for Worker's Compensation benefits are barred by the exclusivity of the Workers' Compensation remedy." Insura offers additional grounds for striking each of these counts. It moves to strike counts two, three and eight on the ground that those counts fail to state claims for breach of contract, breach of the implied covenant of good faith and fair dealing and negligence, respectively, "because the plaintiff has alleged neither that he is a party to the insurance contract nor a third party beneficiary thereof'; count four on the ground that General Statutes § 38a-816 (6) does not authorize a private right of action in favor of the plaintiff; count six on the ground that the plaintiffs CUPTA claim is legally insufficient because the plaintiff has failed to plead facts that would support his claim that Insura's actions have been performed with such frequency as to constitute a general business practice; and count nine on the ground that the plaintiff has failed to state a claim for negligent infliction of emotional distress because he has failed to allege facts in support of his legal conclusion that Insura's conduct exposed him to the risk of illness or bodily harm.
As required by Practice Book § 10-42, Insura's motion to strike was accompanied by a memorandum of law in support of the motion, and on August 9, 2002, the plaintiff filed a memorandum of law in opposition to Insura's motion.
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaints . . . to state a claim upon which relief can be granted." (Internal quotation marks omitted.)Peter-Michael, Inc. v. Sea Shell Associates, 244 Conn. 269, 270,709 A.2d 558 (1998). "A motion to strike is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged." Novametrix Medical Systems, Inc. v. BOC Group, Inc.,224 Conn. 210, 215, 618 A.2d 25 (1992). "[I]f facts provable in the complaint would support a cause of action, the motion to strike must be denied. . . . Moreover . . . [w]hat is necessarily implied [in an allegation] need not be expressly alleged. . . . It is fundamental that in determining the sufficiency of a complaint challenged by a defendant's motion to strike, all well-pleaded facts and those facts necessarily implied from the allegations are taken as admitted." (Citations omitted; internal quotation marks omitted.) Gazo v. Stamford, 255 Conn. 245, 260,765 A.2d 505 (2001). "The court must construe the facts in the complaint most favorably to the plaintiff" (Internal quotation marks omitted.)Faulkner v. United Technologies Corp., 240 Conn. 576, 580, 693 A.2d 293
(1997). CT Page 16447
Insura moves to strike the plaintiffs counts two, three, four, six, eight and nine of the plaintiffs amended complaint on the ground that Worker's Compensation Act is the exclusive remedy for the plaintiffs alleged injuries. In its memorandum in support of its motion to strike, Insura submits that the Connecticut Appellate Court, in Coollick v.Windham, 7 Conn. App. 142, 508 A.2d 46 (1986), held that the workers' compensation commission retains exclusive jurisdiction over an employees's action against his employer for bad faith failure to pay workers compensation benefits. The defendant argues, therefore, that based on the court's decision in Coollick v. Windham, each count of the plaintiffs amended complaint must be stricken because the Workers' Compensation Act is the exclusive remedy for the plaintiffs claims.
The plaintiff, in its memorandum in opposition to Insura's motion to strike, argues that the Workers' Compensation Act does not provide the exclusive remedy for bad faith claims against workers' compensation insurers. Moreover, the plaintiff argues that Coollick v. Windham
involved a self insured municipality; thus, the employer, not an insurance company, was the party protected by the exclusivity of the Workers Compensation Act. As a result, the plaintiff argues that his claims should not be stricken as they are not precluded by the exclusivity of the Workers' Compensation Act.
Insura's reliance on Coollick v. Windham is misplaced. Insura notes that the Appellate Court stated that the workers' compensation commission has "exclusive jurisdiction to hear compensation claims." (Emphasis added.) Coollick v. Windham, 7 Conn. App. 142, 148, 508 A.2d 46 (1986). The Appellate Court further articulated that "[i]t is well settled that workers' compensation is the exclusive remedy for an employee seeking redress for work related injuries." (Emphasis added.) Id. The plaintiff, in the present case, however, is not circumventing the workers' compensation commission in an attempt to have the Superior Court adjudicate his compensation claim. His compensation claim has already been decided. The plaintiff instead is seeking redress for Insura's alleged common law and statutorily defined tortuous conduct in administering his workers' compensation benefits.
The Appellate Court's holding in Coollick v. Windham, like that of the trial court, was that the plaintiff failed "to present properly a claim cognizable under the Civil Rights Act because his complaint fail[ed] to set out any deprivation of a right secured by the constitution or laws of the United States. . . ." Id., 145. Moreover, the plaintiff in Coollickv. Windham conceded that the workers' compensation commission had exclusive jurisdiction over a claim for failure to pay benefits, unlike the plaintiff in the present case who has not conceded that the workers' CT Page 16448 compensation commission has exclusive jurisdiction over a claim for failure to pay benefits and, instead, brings common law and Connecticut statutory claims against Insura. Finally, the plaintiffs claim inCoollick v. Windham is distinguishable from the plaintiffs claim in the present case with regard to Insura itself. In Coollick v. Windham, the plaintiff sought damages from his self insured employer. In this case, the plaintiff is seeking damages from an insurance company and its agent; two parties who, unlike an employer, do not fall within the exclusivity realm that the Workers' Compensation Act created. See Sansone v. Esis, Inc., Superior Court, judicial district of New Haven, Docket No. CV 92 0327409 (January 4, 1993, Maiocco, J.).
"There is currently a split of authority [in the Superior Court] as to whether a beneficiary of a workers' compensation award can sue an insurance carrier for bad faith handling of the worker's claims. One line of reasoning holds that the exclusivity principle of workers compensation does not apply because the alleged intentional bad faith handling of a workers' compensation claim by an insurance company does not arise during the course of employment, but rather occurs after the injury for which the worker is being compensated. . . . This line of cases also generally holds that since the remedies provided for by workers' compensation do not provide redress for consequential damages suffered as a result of an insurer's bad faith handling of a workers' compensation award, further administrative remedies would be inadequate and exhaustion futile." (Internal quotation marks omitted.) Silano v. Hartford Underwriters Ins.Co., Superior Court, judicial district of Fairfield at Bridgeport, Docket No. CV 96 0329388 (September 18, 2000, Rush, J.).
"The purpose of the workmen's compensation statute is to compensate the worker for injuries arising out of and in the course of employment, without regard to fault, by imposing a form of strict liability on the employer. . . . The Workers' Compensation Act compromise[s] an employee's right to a common law tort action for work related injuries in return for relatively quick and certain compensation." (Citations omitted; emphasis added; internal quotation marks omitted.) Dowling v. Slotnik,244 Conn. 781, 799, 712 A.2d 396 (1998). "[T]he exclusivity provisions of the Workers' Compensation Act operate as a total bar to actions brought by employees against their employers for job related injuries." (Emphasis added.) Sgueglia v. Milne Construction Co., 212 Conn. 427, 433,562 A.2d 505 (1989).
The Workers' Compensation Act is fraught with unambiguous language that supports the conclusion that it is not the plaintiffs exclusive remedy for his alleged injuries. For instance, the Connecticut Supreme Court cited General Statutes § 31-284 (a) when it found that "[u]nder the CT Page 16449 act's exclusivity provision, "[am employer who complies with the requirements of subsection (b) of [General Statutes § 31-284] shall not be liable for any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment. . . . All rights and claims between an employer who complies with the requirements of sub-section (b) of this section and employees, or any representatives or dependents of such employees, arising out of personal injury or death sustained in the course of employment are abolished other than rights and claims given by this chapter. . . .' General Statutes § 31-284 (a)." (Emphasis added.) Doe v. YaleUniversity, supra, 252 Conn. 668. Along those lines, the court in Delpierv. Connecticut Interlocal Risk Management Association, Superior Court, judicial district of Waterbury, Docket No. CV 01 0164366 (November 28, 2001, Pittman, J.) also cited General Statutes § 31-284 (a) when it found that "[t]he only cause of action that is "abolished' under the workers compensation statutes is the direct cause of action by an employee against an employer for personal injury arising out of and in the course of employment. Conn. Gen. Stat. § 31-284 (a)." Finally, the court in Sansone v. Esis, Inc., Superior Court, judicial district of New Haven, Docket No. CV 92 0327409 (January 4, 1993, Maiocco, J.) cited General Statutes §§ § 31-284 (a), 31-284b (a), and 31-293 (a) when it found that, with regard to the Workers' Compensation Act, "it is obvious that the legislature did not intend to encompass the term `insurers' within the meaning of `employer.'"
Undoubtedly, the alleged failure to pay insurance benefits in the present case is tenuously associated with the employee's original employment injury. Here, however, there are two distinct sets of alleged injuries involved. One injury, already adjudicated by the worker's compensation commission, occurred within the confines of the employee/employer relationship. The other alleged injuries occurred within the confines of a different relationship, that of benefit recipient and insurance company. The latter, moreover, allegedly occurred "after the [employment] injury for which the [plaintiff] is being compensated." Silano v. Hartford Underwriters Ins. Co., supra, Superior Court, Docket No. CV 96 0329388. It is difficult to envisage how, either temporally or physically, a claim against an insurance company for failing to pay benefits is an injury that arises out of and in the course of an employee's employment. "As alleged in the present case, the [injuries] suffered by the plaintiff [do] not arise from the course of employment, but [are] additional [injuries] occurring as a result of independent actions of the insurer that are separate from the original claim." Moran v. Travelers Property Casualty, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. CV 98 0350319 (October 23, 1998, Stodolink, J.). CT Page 16450
The reason for enacting the workers' compensation statute was to provide a no fault "quid pro quo" between employees and employers. Doe v.Yale University, 252 Conn. 641, 672, 748 A.2d 834 (2000); Dowling v.Slotnik, supra, 244 Conn. 799; Perodeau v. Hartford, 259 Conn. 729, 747,792 A.2d 752 (2002). Employees give up the opportunity to sue their employer in common law tort; in exchange, employees receive relatively swift and predictable benefits designed to compensate them for injuries incurred while in the course of their employment. See Id. Employers, in turn, give up the opportunity to contest injuries that may not be their fault; in exchange, employers receive a likewise predictable, and cost effective means by which to protect themselves from the conceivably constant barrage of large tort claims. See Id. Notably, in this equation, the insurance company is absent. If Insura is allowed to take advantage of the exclusivity of the Workers' Compensation Act, it will be reaping the benefits of a statutorily created compromise, between employers and employees, to which it is not a party. Within the workers' compensation scheme, "a right of action should only be deemed taken away from an employee where something of value has been put in its place." (Internal quotation marks omitted.) Perodeau v. Hartford, 259 Conn. 729,747, 792 A.2d 752 (2002). As a result, by granting Insura's motion to strike on the ground that the Worker's Compensation Act is the plaintiffs exclusive remedy under the circumstances, Insura would be taking advantage of the Workers' Compensation Act's "quid pro quo" without giving any "this" for the "that" they are receiving.
This court adopts the position followed by the majority of Superior Court judges,[2] and denies Insura's motion to strike the plaintiffs complaint[3] on the ground that the Worker's Compensation Act is the exclusive remedy for the plaintiffs claims.
Insura moves to strike counts two, three, and eight of the plaintiffs complaint on the alternative ground that the plaintiff has not alleged a contractual relationship between himself and Insura. As a result, Insura argues that the plaintiffs breach of contract, breach of implied covenant of good faith and fair dealing, and negligence claims are legally insufficient.
The plaintiff argues, in his memorandum in opposition to Insura's motion to strike, that the employer and employees are the two distinct beneficiaries of a contract between employers and workers' compensation insurance providers. Furthermore, the plaintiff argues, "as a matter of logic, the entire workers' compensation schema makes no sense unless employees are third party beneficiaries of the contract [between employers and workers' compensation insurance providers]." CT Page 16451
"[O]ne who [is] neither a party to a contract nor a contemplated beneficiary thereof cannot sue to enforce the promises of the contract." (Internal quotation marks omitted.) Tomlinson v. Board of Education,226 Conn. 704, 718, 629 A.2d 333 (1993). "A third party beneficiary may enforce a contractual obligation without being in privity with the actual parties to the contract. . . . Therefore, a third party beneficiary who is not a named obligee in a given contract may sue the obligor for breach." (Citation omitted.) Gateway Co. v. DiNoia, 232 Conn. 223, 230-31,654 A.2d 342 (1995).
"[T]he ultimate test to be applied [in determining whether a person has a right of action as a third party beneficiary] is whether the intent of the parties to the contract was that the promisor should assume a direct obligation to the third party [beneficiary] and . . . that intent is to be determined from the terms of the contract read in the light of the circumstances attending its making, including the motives and purposes of the parties. . . . Although . . . it is not in all instances necessary that there be express language in the contract creating a direct obligation to the claimed third party beneficiary . . . the only way a contract could create a direct obligation between a promisor and a third party beneficiary would have to be . . . because the parties to the contract so intended." (Citation omitted; internal quotation marks omitted.) Gazo v. Stamford, supra, 255 Conn. 261.
Counts two, three, and eight of the plaintiffs complaint allege that the plaintiff was an employee of Resource Group. The plaintiff also alleges that Resource Group provided workers' compensation coverage to its employees through a contract of insurance with Insura. The plaintiff alleges that the purpose of the insurance contract was to handle workers' compensation claims brought by Resource Group employees. The plaintiff further alleges that Insura assumed an obligation to pay workers' compensation benefits to employees of Resource Group. Moreover, the plaintiff alleges that he and other Resource Group Limited employees were intended third party beneficiaries of the insurance contract. Finally, the plaintiff necessarily implies that he filed a workers' compensation claim with Resource Group and that pursuant to the insurance contract Insura accepted the plaintiffs claim and agreed to provide him with benefits.
Construing the facts in the complaint most favorably to the plaintiff, the plaintiff has adequately alleged third party beneficiary status under the workers' compensation insurance contract between his employer and Insura. Therefore, the breach of contract, breach of implied covenant of good faith and fair dealing, and negligence claims of the complaint are CT Page 16452 legally sufficient, and Insura's motion to strike counts two, three, and eight of the plaintiffs complaint are denied.
Next, Insura moves to strike counts four and six of the plaintiffs complaint. Count four alleges that Insura has violated General Statutes § 38a-816 (6), Connecticut Unfair Insurance Practices Act (CUIPA), and count six alleges that Insura has violated General Statutes §42-110b et seq., Connecticut Unfair Trade Practices Act (CUTPA). Insura moves to strike count four on the ground that there is no private right of action under the provisions of CUIPA, and count six on the ground that the plaintiff has failed to allege actions performed with such frequency as to constitute a general business practice and, as a result, has failed to state a claim under CUTPA.
"In order to allege properly a CUIPA violation, the plaintiff must allege, inter alia, that the defendant engaged in the allegedly wrongful conduct with such frequency as to indicate a general business practice." (Internal quotations omitted.) Quimby v. Kimberly Clark Corp.,28 Conn. App. 660, 669, 613 A.2d 838 (1992); Lees v. Middlesex Ins. Co.,229 Conn. 842, 849, 643 A.2d 1282 (1994); Mead v. Burns, 199 Conn. 651,666, 509 A.2d 11 (1986). Additionally, "the legislature has manifested a clear intent to exempt from coverage under CUIPA isolated instances of insurer misconduct." Lees v. Middlesex Ins. Co., supra, 229 Conn. 849. "[A] CUTPA claim based on an alleged unfair claim settlement practice prohibited by § 38a-816 (6) require[s] proof, as under CUIPA, that the unfair settlement practice halls] been committed or performed by the defendant with such frequency as to indicate a general business practice." (Internal quotation marks omitted.) Lees v. Middlesex Ins.Co., supra, 229 Conn. 850.
Here, the plaintiff alleges that Insura delayed weekly workers' compensation benefit checks, improperly converted benefits, improperly reduced benefits, and failed to properly adjust the plaintiffs claim and pay his benefits. The plaintiff also alleges that "[t]he [d]efendant . . . has made it its general business practice to neglect, fail and/or refuse to pay for covered losses . . . under workers' compensation insurance policies thereby forcing said beneficiaries [the plaintiff and his fellow employees] to litigate through either the workers' compensation commission or the Superior Court to recover benefits that they are entitled to. . . ." This court has previously permitted plaintiffs to allege CUIPA violations as a private cause of action and has held similar allegations sufficient to survive a motion to strike. SeeSeeds v. AIG Life Ins. Co., Superior Court, judicial district of New Haven, Docket No. 00 0375958 (December 6, 1996, Zoarski, J.); Hurowitzv. Peerless Ins. Co., Superior Court, judicial district of New Haven, CT Page 16453 Docket No. CV 96 0393713 (August 13, 1997, Zoarski, J.). Construing the facts in the complaint most favorably to the plaintiff, because the plaintiff alleges that the wrongful conduct was performed by Insura with such frequency as to indicate a general business practice, Insura's motion to strike counts four and six of the plaintiffs complaint is denied.
Insura argues that, as to count nine, the plaintiff fails to plead a claim of negligent infliction of emotional distress because he fails to allege conduct by Insura that is sufficient to support such a claim. "In order to recover on a claim of negligent infliction of emotional distress, the plaintiff must prove that the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that that distress, if it were caused, might result in illness or bodily harm." (Internal quotation marks omitted.)Gomes v. Commercial Union Ins. Co., 258 Conn. 603, 619, 783 A.2d 462
(2001).
In count nine of his amended complaint, the plaintiff alleges that Insura "took these actions when it knew or should have known that such actions carried substantial risk of inflecting emotional distress upon the Plaintiff' and that "these actions . . . exposed the Plaintiff to the risk of illness or bodily harm." (Emphasis added.) After referring to the incorporation of paragraphs one through seven from count one of the plaintiffs complaint, however, it is unclear to which "actions" the plaintiff is referring. In count nine of the plaintiffs complaint there are no actions or facts preceding paragraphs eight and nine that would support a claim for negligent infliction of emotional distress. "A motion to strike is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged." Novametrix MedicalSystems, Inc. v. BOC Group, Inc., supra, 224 Conn. 215. Consequently, count nine of the plaintiffs complaint is stricken on the ground that it fails to allege facts in support of legal conclusions.
For all of the foregoing reasons Insura's motion to strike counts two, three, four, six, and eight are denied. Insura's motion to strike count nine is granted.
 ___________________ Howard F. Zoarski Judge Trial Referee